JOURNAL ENTRY AND OPINION.
{¶ 1} Appellant L.F.[1] ("Mother") appeals from a decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, which granted permanent custody of her three children, D.F., E.F. and M.F., to the Cuyahoga County Department of Children and Family Services ("CCDCFS"). On appeal, L.F. complains that the court should not have granted CCDCFS permanent custody of her children, alleging the children should have been placed with her instead. After reviewing the record, we conclude the trial court did not abuse its discretion and affirm the judgment of the court.
 {¶ 2} On December 1, 2000, CCDCFS removed D.F., E.F. and M.F. from the care and custody of L.F. upon a complaint of neglect. E.F. and M.F. were placed into foster care and D.F. was placed into Lincoln Place. On December 4, 2000, CCDCFS filed a motion seeking permanent custody of the children.
 {¶ 3} On June 6, 2001, L.F. admitted to the allegations of the complaint and the children were adjudicated neglected. A case plan was instituted at that time for purposes of pursuing reunification of the minor children with their mother.
 {¶ 4} On August 28, 2001, the first of five dispositional hearings commenced. During this hearing, testimony was heard from several witnesses. First, M.F.'s kindergarten teacher, Diane Lefkowitz, testified that M.F. has no behavioral or learning problems and has not missed a day of school since her placement in foster care in December 2000. She testified that M.F. loves to visit her mother and has a strong bond with her. Next, E.F.'s first grade teacher, Kathy White, testified that E.F. had to repeat the first grade due to attendance problems the year before, but has not missed a day of school since his placement in foster care in December 2000. She also testified that E.F. loved to visit his mother and had a strong bond with her; however, she stated that E.F.'s life appeared more stable now that he was in foster care.
 {¶ 5} Martin Chizmar, D.F.'s counselor at Lincoln Place, testified next. He testified that D.F. is depressed and suffers from a disease of the endocrine system. He testified that he meets individually with D.F. and with D.F. and the mother. He testified that D.F. has a close bond with his mother and opined that L.F. was a "very competent and caring parent." He also stated that he thought it was reasonable for D.F. to be reunited with L.F. and that it would be detrimental for D.F. if L.F. stopped visiting him.
 {¶ 6} Clara Pryor, the foster mother of E.F. and M.F., testified that M.F. and E.F. had been in her care since December 2000. She also testified that E.F. had previously been removed from the mother and placed in her care when he was six months old until he was four and a half years old. She stated that the two children have bonded with her and opined that although the children want to be returned to their mother, it is not in their best interest to do so right now. She also stated that she would be interested in adopting the children if they were removed from the mother permanently.
 {¶ 7} Finally, CCDCFS social worker, Christine Lattiemore, testified that she became involved with L.F. and her children in August 2000 after getting a referral that the children were missing a lot of school. She testified that she developed a case plan for L.F., which included drug assessment, parenting classes, appropriate housing, stable employment and GED classes. She testified that L.F. completed the drug assessment and parenting classes, but had not yet obtained appropriate housing for young children, her GED, or stable employment. She opined that reunification was possible if L.F. got herself together and the children obtained counseling.
 {¶ 8} On October 24, 2001, the second dispositional hearing commenced. During this hearing, testimony was heard from Cleveland Public Schools social worker, Janice Williams. She testified that she became involved with L.F. and her children in October 2000 after getting a referral for tardiness for M.F. and E.F. She testified that she visited their home unannounced and found the exterior conditions of the house so deplorable that she contacted Ms. Lattiemore of CCDCFS. She testified that she talked to L.F. on that day and that L.F. told her that the children were late for school because they lived far away and had to walk to school. She testified that shortly thereafter she and Ms. Lattiemore made another unannounced visit, that L.F. was not home, and that the children would not allow them to enter the home.
 {¶ 9} On November 29, 2001, the third dispositional hearing took place. During this hearing, testimony was heard from CCDCFS psychologist, Dr. Thomas Anuszciewicz. He testified that he evaluated L.F. on March 22, 2001 after getting a referral from CCDCFS. He testified that L.F. was alcohol dependent in sustained full remission. He also testified that L.F. has a problem with dependency on unsuitable male partners and that she had a guarded risk of relapse and instability. He opined that L.F. purposefully denied and/or minimized her problems but had no psychological disorders, mental illness or mood disorders. He specifically stated that "unless she asserts responsibility for her own behavior and judgment and shows insight into the past situations that lead to the removal of her children, she will not be appropriate as a parent." He testified that L.F. needs long term counseling and that he believed reunification was possible if L.F. complied with all the goals of her case plan.
 {¶ 10} On June 1, 2002, the fourth dispositional hearing commenced. During this hearing, closing arguments were heard. The guardian ad litem for the children, in open court, recommended that the children be placed with the mother in the protective supervision of CCDCFS. However, his written report, dated August 27, 2001, recommended permanent custody to CCDCFS if L.F. could not assure compliance with the case plan. His written report also recommended that D.F. be placed in Planned Permanent Living Arrangement with CCDCFS because of his health problems.
 {¶ 11} On June 6, 2002, the final dispositional hearing took place. During this hearing, testimony was heard from three witnesses. First, Roxanne Chavez, a parent child advocate for Cleveland Public School, testified that she became involved with L.F. and her children in November 2000 after she tried to provide E.F. with a winter coat obtained through the Coats for Kids program. She testified that she visited L.F.'s home unannounced and found the house to be boarded up. She also testified that the interior of the house was filthy, strewn with garbage, and smelled of feces. She testified that L.F. appeared to be intoxicated and refused her offer to take E.F. to school. She stated that E.F. often came to school hungry and that she would feed him. Finally, Ms. Chavez testified that L.F. and her older teenage son threatened her and told her to mind her own business.
 {¶ 12} Next, Ms. Lattiemore testified again. She stated that she could not verify whether L.F. had completed her case plan since L.F. had failed to provide any documentation of completion of services. She also stated that she could not verify if L.F. had obtained employment since L.F. failed to present, prior to that day at trial, any documentation to support or authenticate such a claim. She opined that L.F. should not be reunified with her children because of her extended history with CCDCFS and that all attempts at reunification with safeguards had failed in the past.
 {¶ 13} Finally, L.F. testified on her own behalf. She testified that she was living in appropriate housing and that she was working on obtaining her GED, although she was having problems with the math section. She testified that she is currently employed full time as a nurse's aid for an elderly man but could not give any further information for privacy reasons. She stated that she hoped to advance this degree and become a nurse. She stated that she completed her parenting classes and that her parenting teacher would come in and testify on behalf of her parenting skills if necessary. L.F. testified that she had begun therapy in April 2002 with Dr. Falk, has completed three sessions with him, and was told that she did not need any further treatment. She stated that she would be willing to maintain an open relationship with CCDCFS if the children were returned to her. She also testified that she has made arrangements to put E.F. into a school that takes responsibility for getting the children to school on time.
 {¶ 14} On July 22, 2002, the court granted permanent custody of D.F., E.F., and M.F. to CCDCFS. L.F. appeals from that decision and raises two assignments of error for our review.
 {¶ 15} "I. The trial court erred by granting permanent custody to CCDCFS when the decision was not supported by the evidence."
 {¶ 16} In her first assignment of error, L.F. contends the trial court abused its discretion when it granted permanent custody of her children to CCDCFS in the absence of clear and convincing evidence and when it determined that her children could not be placed with her in a reasonable amount of time. CCDCFS maintains the court did not abuse its discretion when it determined the best interest of the children would be served by granting CCDCFS permanent custody. The issue presented here concerns the permanent custody of the children.
 {¶ 17} In considering an award of permanent custody, the court must first determine whether, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody. R.C.2151.414(D). In determining the best interest of the child during the permanent custody hearing, the court must consider the factors listed in R.C. 2151.414(D), which include the reasonable probability the child will be adopted, the interaction of the child with the child's parents, siblings, and foster parents, the wishes of the child, the custodial history of the child, and the child's need for a legal secure permanent placement.
 {¶ 18} Here, the record reveals that L.F. has a lengthy history with CCDCFS.E.F. and D.F. were adjudicated neglected in 1993.[2] E.F. and D.F. were adjudicated neglected in 1995.[3] Despite efforts by CCDCFS to reunite L.F. with her children in both of these cases, E.F., D.F., and M.F. were again adjudicated neglected in 2001, the subject of this appeal. E.F. and M.F. have lived with the same foster family since December 2000. E.F., in fact, has been placed with this family for more than half of his life. Both children have developed a close bond to this family and are developing normally for their age. D.F. has been living in assisted living for several years. Although he has not developed the same kind of bonding as his two siblings, he is in need of constant medical care that cannot be provided by the mother. Finally, although the guardian ad litem's ultimate recommendation was for protective supervision, his written report stated that permanent custody would be in the children's best interest should the conditions in his report not be met. Accordingly, there is clear and convincing evidence that supports the trial court's determination that permanent custody is in the best interest of the children.
 {¶ 19} In addition to determining the child's best interest, the court must make a second determination before granting permanent custody: it must determine whether the child can be placed with a parent within a reasonable time or should not be placed with the parent. R.C.2151.414(B)(1)(a). The court is required to enter a finding that the child cannot be placed with a parent within a reasonable time if any factors set forth in R.C. 2151.414(E) apply, including the following:
 {¶ 20} "(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties."
 {¶ 21} Here, the trial court enumerated R.C. 2151.414(E)(1) as applicable to the children. Specifically, the trial court found that L.F. had failed continuously and repeatedly to substantially remedy the conditions causing the children to be removed from the home. Specifically, the court found that L.F. failed to comply with the case plan. At the time of trial, L.F. had completed the initial drug assessment and parenting classes, but had not completed her GED, obtained appropriate housing, or stable employment. She had also failed to enter into psychological counseling, as recommended by Dr. Anuszkiewicz. Although L.F. testified at trial that she had, in fact, completed these aspects of her case plan, she was unable to provide any documentation or witness testimony to verify or corroborate her claims. Due deference must be accorded the findings of the trial court because the trial court is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the testimony. Thus, the trial court was free to believe the State's witnesses over L.F.'s own testimony. Accordingly, the trial court's determination that D.F., E.F., and M.F. could not be placed with L.F. within a reasonable time is supported by clear and convincing evidence.
 {¶ 22} We find that the trial court made its findings according to the statutory guidelines of R.C. 2151.414 and that these findings are supported by clear and convincing evidence. Therefore, L.F.'s first assignment of error is overruled.
 {¶ 23} "II. The appellant was denied due process of law in violation of her Ohio and United States Constitutional rights because of the Cuyahoga County Juvenile Court's failure to provide a complete transcript of the proceedings and render a timely judgment."
 {¶ 24} In her second assignment of error, L.F. contends that the trial court failed to provide a complete record of the proceedings before it. Specifically, L.F. contends that transcripts of the December 19, 2001 and February 11, 2002 hearings were not filed with this Court.
 {¶ 25} Pursuant to Juv.R. 37(A), the juvenile court must make a record of all adjudicatory and dispositional proceedings in permanent custody cases. Here, a complete record of the adjudicatory and dispositional proceedings were filed with this Court. A transcript of the adjudication hearing on June 6, 2001, and transcripts of the dispositional hearings on August 28, 2001, October 24, 2001, November 29, 2001, June 1, 2002, and June 6, 2002 were filed with this Court. A review of the trial record demonstrates that no evidence was offered or accepted by the trial court in consideration of the pending matter on December 19, 2001 and February 11, 2002. Rather, the only action taken by the trial court on those dates in question was the continuance of the trial to a later date.[4] Accordingly, L.F. can not show that she was prejudiced when the trial court failed to provide transcripts for those two dates.
 {¶ 26} L.F.'s second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
PATRICIA A. BLACKMON, P.J., and ANTHONY O. CALABRESE, JR., J., concur.
[1] The parties are referred to herein by their initials or title in accordance with this Court's established policy.
[2] Two other children, not subject to this appeal, were also adjudicated neglected in this case.
[3] Three other children, not subject to this appeal, were also adjudicated neglected in this case.
[4] On December 19, 2001, the trial court granted an unopposed motion for continuance made by the State. On February 11, 2002, the trial court granted a motion for continuance made by L.F.